IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Billy Shane Tucker, ) | C/A No. 0:09-3180-JMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Bob Olsen; Warden McCall; Mr. Claytor; LT ) | |
| Williams; Major Bush, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Billy Shane Tucker ("Tucker"), a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 23 & 58.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Tucker was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 59.) Tucker filed a response in opposition. (ECF No. 61.) Additionally, the defendants filed a response in opposition to Tucker's motion for summary judgment. (ECF No. 36; see also ECF No. 37.) Also pending before the court is Tucker's motion for default judgment (ECF No. 39) to which the defendants filed a response (ECF No. 41). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Tucker's motions denied.

## BACKGROUND

At the time he filed his Complaint, Tucker was housed at Perry Correctional Institution ("Perry"). Liberally construed, Tucker's Complaint alleges: (1) that from October 30, 2008 through November 14, 2008 he was housed in the Special Management Unit ("SMU") without certain personal property, which, pertinent to his claims presented here, includes his mattress, bedding, cup, and eating utensil; (2) that as a result of having no mattress he sustained injury to his back; (3) that while housed in the C-Dorm he has been served cold food on unsanitary trays; and (4) that while housed in SMU he was denied access to the media, including radios, newspapers, and magazines.[1] (Compl., ECF No. 1 at 3-4.) Tucker seeks monetary damages from the defendants. (Id. at 5.) In support of their motion for summary judgment on this claim, the defendants have submitted various affidavits and copies of grievances filed by Tucker. Tucker has submitted copies of his requests to staff, grievances, and medical records.

## DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] Tucker filed a motion in which he requested dismissal of Defendants Najjar and Cocciolone from his Complaint, which was granted by Docket Text Order on July 14, 2010. (ECF Nos. 28 & 53.) In his response to the defendants' motion for summary judgment, Tucker indicates that, as a result of the dismissal of these defendants, he is no longer pursuing his claims concerning the grievance process and access to the courts. (ECF No. 61 at 9.)

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.  Tucker's Claims**

   **1.  Personal Property**

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2)

*PJG*

deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

Tucker alleges that the defendants, upon moving him to SMU on October 30, 2008, deprived him of certain personal items, including, pertinent to this claim, his mattress and bedding.[2] The defendants first contend that they did not deprive him of these items. The defendants assert that when Tucker was relocated to SMU, Defendant Williams instructed Tucker to carry his blanket and mattress, but Tucker refused. (Williams Aff. ¶ 2, ECF Nos. 36-11, 58-13; Log Book Notes, Ex. E, ECF Nos. 36-11, 58-14.) Tucker concedes that he refused to carry these items; however, he contends that he could not carry them due a shoulder injury and that prison policy at that time provided that any material taken to SMU would be placed in a yellow laundry buggy and pushed by another inmate. In response to one of Tucker's grievances on this issue, the Warden stated that upon review

---

[2] Tucker's allegations with regard to the denial of his radio and batteries while housed in SMU are addressed in more detail below. Further, to the extent that Tucker alleges that as a result of the defendants' actions, his radio, batteries, and headphones were stolen, Tucker concedes in his response to the defendants' motion for summary judgment that this is no longer at issue and that SCDC has replaced these items. (ECF No. 61 at 6.)

of Tucker's medical history, there was no information supporting his statement that he had a medical condition preventing him from carrying these items. (ECF No. 61-5 at 9.) While Tucker has provided medical records which support his assertion that his shoulder was injured at that time and that he consequently had a "belly chain pass," permitting him to be handcuffed without a belly chain, these records do not list any limitations on Tucker's ability to lift or carry. (ECF No. 61-7 at 2-4.) Further, Tucker has failed to provide any support for his statement regarding the policy with regard to transporting material to SMU. Accordingly, Tucker has failed to set forth sufficient facts to support his assertion that the defendants deprived him of his mattress and bedding.

With regard to the first prong of the Strickler test, the defendants also argue that sleeping on a steel bed or on the floor without a mattress or bedding for fourteen days is not a serious deprivation of a basic human need. However, courts appear to be split on this issue.[3] Compare Alfred v. Bryant, 378 Fed. Appx. 977, 980 (11th Cir. May 12, 2010) (unpublished) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency.") (citing Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985)) with Seagrave v. Hennessey, 19 F.3d 29, 1994 WL 68276, *2 (9th Cir. Mar. 2, 1994) (Table) (concluding that allegations that an inmate had to sleep on the floor without a mattress and had to wear the same clothes for forty-five days were sufficiently serious to satisfy the objective component of an Eighth Amendment claim).

---

[3] The court also observes that with regard to the deprivation of his mattress and bedding, Tucker has alleged that as a result he suffers from back pain. Further, Tucker has submitted medical documentation which tends to support this allegation. (ECF No. 61-6 at 9-13; ECF No. 61-7 at 1-2.) Tucker also complains that he was without his cup and eating utensil; however, he has alleged no injury as result of this challenged condition. See Strickler, 989 F.2d at 1380-81; 42 U.S.C. § 1997e(e).

PJG

However, even assuming that Tucker's allegations satisfy the objective prong of the Eighth Amendment test, Tucker has failed to present any evidence from which a reasonable jury could find that the defendants took these actions with a sufficiently culpable state of mind. See Farmer, 511 U.S. at 847; Parrish, 372 F.3d at 302. Tucker alleges that he wrote requests and verbally complained to Defendant Bush. (See Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 4, ECF No. 61 at 4; see also Step 1 Grievances, ECF Nos. 1-1 at 15 & 61-5 at 6.) However, Tucker has failed to submit any probative evidence to support this assertion or otherwise show that Defendant Bush knew that Tucker was without his mattress and bedding and was experiencing pain as a result. (Cf. Bush Aff. ¶ 2, ECF No. 58-15.) The only evidence that Tucker has submitted that would indicate that anyone at SCDC was notified that Tucker was without his mattress and bedding and as a result was in pain is a request to staff dated November 13, 2008. On November 14, 2008, a response was issued stating, "Capt. Byrd tells me you have everything back and your mattress, the exception, will be coming right away. He is aware and working on this. Advise if you have problems. You can get Tylenol/Ibuprofen from officers." (ECF No. 61-4 at 2.) Based on this record, no reasonable jury could find that any of the defendants were deliberately indifferent to a prison condition causing a serious deprivation of Tucker's basic human needs.

### 2. Food

Tucker alleges that while housed in C-Dorm he has been served "cold food" on "uncleaned and unsanitary trays." (Compl., ECF No. 1 at 3.) He further alleges that the food was not properly prepared or served. (Id.) It is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted); see also Farmer v. Brennan, 511 U.S. 825, 833 (1994). The

Constitution does not guarantee, however, food that is prepared and served in a culinarily pleasing manner. See Lunsford v. Bennett, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); LaMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that a temporary diet of Nutraloaf did not rise to a constitutional violation); Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Williams v. Berge, 102 Fed. Appx. 506, 507 (7th Cir. 2004) (unpublished) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted). Prisoners simply cannot expect the "amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988); see also Lasure v. Doby, C/A No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (unpublished) (noting that plaintiff was "being held in a [] jail facility, not a hotel"). The defendants have submitted the affidavit of Bob Olson, the Food Service Director at Perry Correctional Institution, who avers that food warmers are used to assure that food is served at proper temperatures, that Perry's food service operation received an "A" grade during its most recent inspection from DHEC, and that food trays are regularly placed through a dishwasher and are not greasy, dirty, or unsanitary. (Olson Aff. ¶¶ 2-3, 6, ECF No. 58-7.) Although Tucker disputes these statements, he has not alleged any illness or injury either from eating the food or using the trays. See Strickler, 989 F.2d at 1380-81; 42 U.S.C. § 1997e(e). Therefore, his allegations are insufficient to state a constitutional claim.

3. **Access to Media**

Tucker alleges that, while housed in SMU, he was denied "[a]ccess to the media," including radios, newspapers, and magazines. (Compl., ECF No. 1 at 3.) The United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. at 89; see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). The defendants have presented affidavits in which Warden McCall and Associate Warden Claytor aver that the restriction of magazines and newspapers in the SMU was due to security issues raised when inmates were using these publications to cover their cell openings and cell lights. (McCall Aff. ¶ 3, ECF No. 58-5; Claytor Aff. ¶ 3, ECF No. 58-6.) Additionally, they state in their affidavits that radios and batteries were restricted from the SMU because inmates were making handcuff keys from them, again raising security issues. (McCall Aff. ¶ 2, ECF No. 58-5; Claytor Aff. ¶ 2, ECF No. 58-6.) In light of this unrefuted evidence, Tucker cannot show that, even

if the deprivation of these items impinged upon his constitutional rights, the policies are not reasonably related to a legitimate penological interest.

**C.  Qualified Immunity**

Additionally, the defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must determine, in whichever order is appropriate to the facts presented, (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Because Tucker has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

**D.  Tucker's Motion for Default Judgment**

Tucker also seeks default judgment because he was not served with the defendants' response to his summary judgment motion by the May 14, 2010 deadline. Although the record indicates some confusion about the address at which Tucker was served with the defendants' response, even assuming defective service of the defendants' summary judgment response, the alleged failure of the defendants to timely respond to the plaintiffs' *motion* would not entitle the plaintiffs to a judgment, default or otherwise. See Fed. R. Civ. P. 55 (discussing default when a party "has failed to plead or

otherwise defend"). Therefore, default judgment is not appropriate and Tucker's motion for default judgment should be denied.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 58) be granted and that Tucker motions (ECF Nos. 23 & 39) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 19, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).